HIBBARD (GAYTES v.). See Case No. 5.287.

HIBBLER (BLACKMAN v.). See Case No. 1,471.

## Case No. 6,454.

### The HIBERNIA and The RELIEF.

[5 Ben. 352.] [1]

District Court, S. D. New York. Oct., 1871.

COLLISION—TUG AND SCHOONER—HOLDING COURSE.

A ship, in tow of a tug, on a hawser, was going to sea from the port of New York. When below the Narrows, they met a schooner bound in, coming on a course which would have carried her to the west of them, the wind being from the north of west. When the vessels were near each other, the schooner luffed up into the wind, and, missing stays, fell stern foremost across the hawser, and was struck by the stem of the ship, which, as soon as the manoeuvre of the schooner was seen, had starboarded her helm, the tug having at the same time stopped: *Held*, that the schooner was solely responsible for the collision.

In admiralty.

Townsend Scudder, for libellants.
Welcome R. Beebe, for steamtug.
Robert D. Benedict, for ship.

BLATCHFORD, District Judge. On the 22d of May, 1866, at about 11 o'clock, a. m., while the ship Hibernia was being towed out to sea by the steamtug Relief, in the lower bay of the port of New York. not far below the Narrows, the ship came into collision with the schooner Jesse Jones, owned by the libellants, and bound into the port from sea. The stem of the ship struck the starboard side of the schooner about abreast of her main rigging, and the schooner sank almost immediately. The ship was being towed by a hawser from the stern of the steamtug.

The case made by the libel is, that the wind was about west by north; that the schooner was heading north by west, with her port tacks aboard, close hauled, and with her sheets flat down; that the steamtug and the ship had plenty of room to pass to the leeward of the schooner; that it was the duty of the steamtug and the ship to keep away from the schooner, by putting their helms to starboard; that, instead of keeping to the leeward, they came close down to the schooner, while the schooner was standing upon her course; that the mariners on the schooner, finding a collision inevitable, put her helm hard down, which brought her in stays; that the ship and the steamtug, failing to put their helms a-starboard, and failing to give the schooner sufficient sea room, came towards the schooner. and, while she was in stays, with her helm hard-a-starboard, the ship struck the schooner; and that the collision occurred through the fault of those in charge of the steamtug and of the ship.

The defence set up in the answers of the steamtug and the ship is, in substance, that the schooner was going up the bay on such a course, that, if she had kept it, she would have passed at a safe distance to the windward of the steamtug and the ship; that she,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

in fact, passed the steamtug at a considerable distance to the windward, but then attempted to tack and missed stays, and got sternway on her, and was carried stern foremost across the bows of the ship, and between the ship and the steamtug; that, as soon as danger of collision was seen, the steamtug was stopped, and the helm of the ship was put hard-a-starboard, and her bows were thrown to port; that the schooner drifted stern foremost over the slackened hawser and against the bows of the ship; and that the collision was the fault of those navigating the schooner.

The case made by the libel and sought to be established by the evidence on the part of the libellants is, that the ship came on to the line of the schooner's course while the schooner was keeping such course, and failed to starboard, and ran into the schooner while the schooner was in stays, after she had luffed to avoid a collision, which she saw was inevitably to result from the approach of the course of the ship to the course of the schooner. But I am satisfied, on the whole evidence, that the case of the libellants is not made out; that there was abundance of room for the schooner to pass safely to the windward of the steamtug and of the ship, if the schooner had kept her course; that the steamtug and the ship gave the schooner a sufficiently wide berth to the leeward, and were on a course which would have carried them safely to the leeward of the schooner, if the latter had kept her course; that the schooner improperly and unnecessarily undertook to luff up into the wind, and so got sternway on her, which caused her to drift stern foremost to the leeward; that the steamtug, the moment any danger was perceived, stopped, while the ship at the same time starboarded; that the steamtug and the ship never changed their courses so as to come more on the course of the schooner; that the collision was not at all the fault either of the steamtug or of the ship; and that it was wholly the fault of the schooner. The libel must, therefore, be dismissed, with costs.